THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:09-CV-13-FL

| | | |
|---|---|---|
| CATHY B. NUCKLES, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Cathy B. Nuckles ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. Claimant responded to Defendant's motion and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant filed an application for DIB and SSI payments on 8 June 2005, alleging disability beginning 1 January 2004. (R. 52-54). Both claims were denied initially and upon reconsideration. (R. 36-37, 40, 45). A hearing before the Administrative Law Judge ("ALJ") was held on 26 September 2007, at which Claimant was represented by counsel and a vocational

expert ("VE") appeared and testified. (R. 240-64). On 9 October 2007, the ALJ issued a decision denying Claimant's request for benefits. (R. 17-29). On 17 September 2008, the Appeals Council denied Claimant's request for review. (R. 6-9). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2); 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) finding that the severity of Claimant's mental deficiency does not meet or equal the requirements of Listing 12.04; (2) improper assessment of Claimant's credibility; (3) improper assessment of Claimant's

3

residual functional capacity ("RFC"). Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 9, 13, 15. ("Pl.'s Mem."). Claimant contends further that new evidence exists demonstrating Claimant is conclusively disabled under Listing 12.05C and the case should therefore be remanded to the ALJ pursuant to sentence six of 42 U.S.C. § 405(g) ("sentence six").

## FACTUAL HISTORY

### I.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 22). Next, the ALJ determined Claimant had the following severe impairments: (1) fibromyalgia, (2) asthma, (3) chronic obstructive pulmonary disease ("COPD"), (4) depression and (5) alcohol abuse. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found Claimant had "moderate restriction" in activities of daily living, "moderate difficulties" in social functioning and that Claimant was moderately limited in her ability to maintain concentration, persistence, and pace. (R. 23). The ALJ found Claimant has experienced no episodes of decompensation. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] and could perform simple, routine and repetitive tasks with no

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing

4

public contact, occasional exposure to supervisors and coworkers and no strict quotas. (R. 24). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 27). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work as a housekeeper. (R. 28).

## II.    Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 47 years old and unemployed. (R. 243, 245). Claimant testified that she attained an eighth grade education after repeating every grade but fourth grade and was enrolled in special education courses. (R. 244). Claimant testified further that she reads and writes "[v]ery little," and in particular, can read and write her name and address and "can recognize some words." (R. 244-45). Claimant's past work experience includes working as a cook for the Onslow County School System and for various restaurants. (R. 246).

Claimant testified that she experiences "good days and bad days," and that on many days, she does not "get up until later on in the evening." (R. 251). Claimant has migraine headaches four days a week, sometimes lasting all day. (R. 252). Claimant testified to experiencing memory and concentration difficulties and feelings of worthlessness. (R. 252, 257). Claimant reported that she complained to medical personnel of hearing evil voices periodically, telling her she is "no good." (R. 257). Claimant cries at times but is uncertain whether her crying is attributable to depression specifically or to not feeling well generally. (R. 255). Claimant complained of low blood pressure and testified about a recent emergency room visit as a result.

---

a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

(R. 258). Claimant experiences no side effects from her medications, which provide some relief. (R. 250). However, Claimant testified to having difficulty affording medications and recently applied for food stamps and medicaid. (R. 250). Claimant experiences sleep difficulties and a varying weight and appetite. (R. 257).

Claimant smokes approximately one pack of cigarettes per day (R. 250), and despite spending time in a detoxification center, Claimant testified that she continues to drink "a beer or two, here or there," especially lately due to her inability to afford medications. (R. 256). Claimant is capable of manipulating small objects, such as a pencil, with her right hand only; however, her hand and fingers become more stiff as the day progresses. (R. 251). Claimant wears a brace on her left hand per the suggestion of her doctor; however, the pain in her wrist has not been diagnosed. (R. 252). Although not suggested by a doctor, Claimant walks with a cane because her left hip aches "from the time I get up until the time I lay down." (R. 251).

Claimant testified that she is unable to lift more than five pounds at a time, has difficulty switching between standing and sitting due to stiffness, cannot walk more than a quarter of a block and that her left side drags when she walks. (R. 253, 257-58). As for daily activities, Claimant cooks but performs no other household chores, relying instead on her husband and teenage sons. (R. 248, 254). Claimant listens to the radio and watches "some" television. (R. 253). Claimant has a driver's license but is unable to drive for long periods of time due to panic attacks. (R. 248). Claimant no longer attends church as she is unable to sit for long periods of time. (R. 249).

6

## III. Vocational Expert's Testimony at the Administrative Hearing

Stephen Carpenter testified as a VE at the administrative hearing. (R. 259-63). After the VE's testimony rega rding Claimant's past work experience (R. 259-62), the ALJ posed the following hypothetical:

> Assum[e] the individual who's 47 years of age, is functionally illiterate, can do a maximum of light work, the work should not involve the public and only occasional exposure to supervisors and coworkers 1/3 of the time so simple, repetitive, and would not have the production pace, if you will, would not require . . . 100 widgets per hour . . . would she be able to go back to that type of prior relevant work?

(R. 263). The VE responded the individual could perform light housekeeping in any industry. *Id.* The VE explained if the individual "would [] los[e] twenty percent or more of her function, work pace, day in, day out, she wouldn't be able to maintain attendance or work performance." *Id.*

## DISCUSSION

### I. This case should not be remanded under sentence six of 42 U.S.C. § 405(g) for consideration of additional evidence.

Claimant urges this Court to remand this case under sentence six in order for the ALJ to consider evidence not previously presented to the ALJ or the Appeals Council.[2] Pl.'s Mem. at 7-9; [DE-19.2 at 4]. For the reasons provided below, this evidence does not meet the regulatory requirements for new evidence; and therefore, remand is not warranted.

---

[2] Claimant contends further that "in light of new and material evidence . . . [Claimant] should be found disabled . . . and benefits paid to her in a reversal of the [ALJ's] decision." Pl.'s Mem. at 9. Claimant's contention is misplaced. In reviewing evidence presented for the first time to the reviewing court, the court is limited to determining only whether the new evidence meets each of the requirements of sentence six and if so, remanding the case to the ALJ for consideration of the new evidence. 42 U.S.C. § 405(g); *see Rogers v. Barnhart*, 204 F. Supp. 2d 885, 892 (W.D.N.C. 2002).

Claimant must satisfy three prerequisites to merit a remand on the basis of newly discovered evidence: (1) the evidence must be new; (2) it must be material; and (3) there must be "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Evidence is new if it is not duplicative or cumulative of that which is already contained in the record. *Wilkins v. Sec'y, Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (citations omitted). Evidence is material if it relates to the period on or before the date of the ALJ's decision, 20 C.F.R. §§ 404.970(b), 416.1470(b), and there is a "reasonable possibility that the new evidence would have changed the outcome" of the case. *Wilkins*, 953 F.2d at 96 (citing *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985)). In this case, the relevant time period extends from 1 January 2004 (Claimant's alleged disability onset date) to 9 October 2007 (the date of the ALJ's decision). (R. 20, 29). Finally, as for good cause, the courts have recognized that in crafting the statute governing remand it was Congress's intent to permit remand pursuant to sentence six on a very limited basis. *See Rogers*, 204 F. Supp. 2d at 892 ("'Congress made it unmistakably clear' that it intended to limit remands for 'new evidence.'") (quoting *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)). Indeed, "[t]he 'good cause' prerequisite . . . obligates a [claimant] to demonstrate a reasonable justification for the failure to acquire and present the evidence at the administrative level." *Combs v. Astrue*, No. 5:06CV00072, 2007 U.S. Dist. LEXIS 28391, at *22, 2007 WL 1129398, at *6 (W.D. Va. Apr. 17, 2007) (citing *Templeton v. Comm'r of Soc. Sec.*, 215 Fed. Appx. 458 (6th Cir. 2007)). Moreover, Claimant bears the burden in proving that the good cause and other requirements of sentence six are met. *Rogers*, 204 F. Supp. 2d at 892.

8

Claimant seeks to introduce a report prepared by Donna Daniels, M.A., L.P.A., dated 20 April 2009. According to that report, Claimant has "mild mental retardation" and "major depression, recurrent" and based on IQ test results, Claimant functions in the below average range of intelligence globally. [DE-19.2 at 4]. Claimant contends this evidence "proves [her] mental impairments are severe enough to meet . . . Listing 12.05C for mental retardation." Pl.'s Mem. at 7. The Court disagrees, finding Claimant has failed to satisfy the materiality and good cause requirements of § 405(g).

First, Ms. Daniels' evaluation of Claimant occurred a year and half after the issuance of the ALJ's decision. [DE-19.2 at 4]. Furthermore, Claimant waited over seven months after the Appeals Council denied her request for review to obtain additional evidence concerning her mental impairment. (R. 6-9); [DE-19.2 at 1]. Finally, upon comparing Ms. Daniels' report with the evidence before the ALJ, the Court finds that the report is substantially cumulative of evidence already in the record.

As the ALJ noted, Craig Farmer, Ph.D., a state agency examining consultant, found that Claimant "possibly present[ed] within the mild mentally handicapped to borderline range of intellectual ability," was unable to remember three unrelated objects after five minutes, was capable of performing simple, repetitive tasks, was impaired in her ability to relate to supervisors or coworkers and had minimally adequate tolerance for the stress and pressures associated with day-to-day work activity. (R. 26, 146) (emphasis added). The ALJ noted further that Dr. Farmer made diagnoses of dysthymia, panic disorder, personality disorder with paranoid traits, possible

9

borderline intellectual functioning and a Global Assessment of Functioning ("GAF") score of 55.[3] *Id.*

In evaluating Claimant's claim, the ALJ considered also the Psychiatric Review Technique and Mental RFC reports completed by state agency non-examining consultant Brett A. Fox, Psy.D. (R. 161-73), who in evaluating Claimant's mental abilities, considered both mild mental retardation and a borderline IQ. (R. 28, 165). Finding Claimant was moderately limited with respect to activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace - findings adopted by the ALJ - Dr. Fox concluded Claimant was capable of performing simple, routine tasks with "some problems relating to coworkers and supervisors . . . ." (R. 24, 159, 171). Finally, in summarizing Claimant's testimony, the ALJ noted that Claimant attended special education classes in school and had been told that she has "some mental retardation." (R. 27, 244).

Even if this Court were to find that the newly proffered evidence is material given the IQ test scores, Claimant has failed to demonstrate a valid reason for her failure to introduce the evidence during the administrative proceedings. Claimant's substantial delay in seeking a psychological evaluation weighs against a finding of good cause. *See Williams v. Barnhart*, No. 05-CV-71907 DT, 2005 U.S. Dist. LEXIS 42030, at *22 (D. Mich. Oct. 24, 2005) (explaining claimant, "who had the benefit of representation during the administrative proceedings, has not even argued, much less demonstrated, that there is a valid reason for her failure to seek a

---

[3] The GAF scale ranges from zero to one-hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 1994). A GAF score of 55 indicates "[m]oderate symptoms . . . [or] moderate difficulty in social, occupational, or school functioning." *Id.* at 32 (bold typeface omitted).

10

psychological evaluation on her own or request a consultative psychological evaluation during those proceedings"); *see also Miracle v. Astrue*, No. 08-65-JBC, 2009 U.S. Dist. LEXIS 23061, at *9, 2009 WL 774098, at *3 (E.D. Ky. Mar. 20, 2009) (finding remand to consider report indicating claimant met the requirements of Listing 12.05(C) unwarranted as claimant "had ample opportunity to obtain probative evidence of a purported mental impairment prior to the ALJ hearing, but did not do so") (quoting *Winters v. Comm'r of Soc. Sec.*, No. 98-1991, 2000 U.S. App. LEXIS 11816, 2000 WL 712353, at *2 (6th Cir. May 22, 2000)).

Accordingly, the additional evidence presented by Claimant does not warrant a remand pursuant to sentence six of 42 U.S.C. § 405(g).

## II. The ALJ's finding that Claimant's impairments did not meet or equal Listing 12.04 is supported by substantial evidence.

Claimant argues that the ALJ erred by finding that her impairments do not meet or equal Listing 12.04, the listing for affective disorders. Pl.'s Mem. at 9 [DE-26.2].

To establish the required severity of Listing 12.04, Claimant must show that she meets the criteria listed in both sections "A" and "B," or the requirements of section "C." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. Section "A" requires medically documented persistence, either continuous or intermittent, of either depressive syndrome, characterized by at least four specified characteristics, manic syndrome, characterized by at least three specified characteristics, or bipolar syndrome. *Id.* Additionally, Claimant's depressive, manic or bipolar syndrome must result in at least two of the criteria outlined in section "B," indicating marked limitation in functioning as a result of a nonexertional limitation. *Id.* Alternatively, Claimant's impairments may be of listing-level severity if she meets the criteria outlined in "C," including a medically documented history of a chronic affective disorder of at least two (2) years' duration that has

11

caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, as well as one of the specified characteristics. *Id.*

Contending she suffers from depressive syndrome, Claimant argues she meets the criteria of both sections "A" and "B." Pl.'s Mem. at 10. Claimant cites records from Onslow County Behavioral Healthcare Services ("OCBHS") in support of her contention that she suffers from appetite disturbance with change in weight, sleep disturbance, decreased energy, feelings of worthlessness, difficulty concentrating, and hallucinations and paranoid thinking, six of the eight characteristics outlined in section "A." *Id.* Claimant argues further that she meets the "B" criteria because she suffers from marked limitations in her ability to perform daily living activities and in maintaining social functioning and concentration and pace. *Id.*

The ALJ, however, found that Claimant's mental impairment did not meet or medically equal the criteria of Listing 12.04, noting that "[i]n making this finding, the undersigned has considered whether the 'paragraph B' criteria are satisfied." (R. 23). In particular, the ALJ found that Claimant suffered from moderate limitations in her ability to perform daily living activities and in maintaining social functioning and concentration, persistence or pace and that Claimant experienced no episodes of decompensation. *Id.*

Upon review of the record, the Court finds that the ALJ's determination is supported by substantial evidence. As an initial matter, the Court notes that in considering the "B" criteria, the ALJ cites specifically the records from OCBHS, the records characterized by Claimant as "treating source opinions" and allegedly disregarded by the ALJ. *See* Pl.'s Mem. at 12 (contending "[t]he fact that the ALJ did not give controlling weight to the opinions of

12

[Claimant's] treating physicians at [OCBHS] is reversible error"). While the OCBHS records indicate at times "abnormal" results in concentration and memory, judgment, mood/affect, thought processes/organization and psychotic thinking, the OCBHS treating sources consistently found Claimant suffered from mild depression only - a finding in accord with that of state agency examining consultant Dr. Farmer and non-examining consultant Dr. Fox. (R. 146, 164, 175, 177, 198-233). Claimant does not cite any evidence from OCBHS treating sources indicating that Claimant experiences marked limitations as a result of her mild depression.

In support of his finding that Claimant suffers from a moderate limitation of daily activities, the ALJ notes that Claimant is able to maintain her household responsibilities, including preparing meals and performing light household chores and that no evidence exists indicating Claimant is incapable of maintaining hygiene or grooming. (R. 23, 164, 178). With respect to social functioning, the ALJ acknowledged Claimant's complaints of mild paranoia, suspicious feelings in social situations and some feelings of panic, especially when driving, but noted that the record indicates Claimant has no difficulty getting along with others. (R. 23, 146, 198, 200, 217-18). In considering Claimant's limitations regarding concentration, persistence or pace, the ALJ relied on Dr. Farmer's consultative examination, wherein Dr. Farmer concluded Claimant was capable of performing simple, repetitive tasks despite finding Claimant possibly presented with a mild mental handicap and describing as "minimally adequate" Claimant's ability to tolerate stress and pressures associated with day-to-day work activity. (R. 23, 146). Finally, the ALJ noted that Claimant has experienced no episodes of decompensation. (R. 23). The ALJ's findings are supported further by those of non-examining state consultant Dr. Fox, who described Claimant as moderately limited with respect to activities of daily living,

13

maintaining social functioning and maintaining concentration, persistence or pace and concluded Claimant was capable of performing simple, routine tasks with "some problems relating to coworkers and supervisors . . . ." (R. 24, 159, 171).

The ALJ appropriately considered Listing 12.04 and substantial evidence supports his determination that Claimant's impairments do not meet or equal this Listing. Although Claimant may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. *Craig*, 76 F.3d at 589. The ALJ discussed the requirements for Listing 12.04 in more than a perfunctory manner and properly concluded that Claimant failed to produce evidence of marked restrictions in at least two of the section "B" criteria. Accordingly, the Court finds Claimant's argument is without merit.

**III.     The ALJ properly evaluated the credibility of Claimant's statements.**

Claimant contends the ALJ failed to adequately evaluate the credibility of Claimant's testimony. Pl.'s Mem. at 15-16. In particular, Claimant contends that the ALJ "[gave] no reasoning for his credibility finding [] only claiming that 'he observed the demeanor of the claimant at the hearing and believes she exaggerated both her pain and other limitations.'" *Id.* (quoting (R. 27)).

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); Soc. Sec. Rul.

14

("S.S.R.") 96-7p, 1996 WL 374186, at *1; *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); S.S.R. 96-7p, 1996 WL 374186, at *4. A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. S.S.R. 96-7p, 1996 WL 374186, at *4; *see Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

(1)     effect of symptoms on claimant's daily activities
(2)     location, duration, frequency and intensity of the symptom(s)
(3)     factors that precipitate or aggravate claimant's symptoms
(4)     type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
(5)     non-medical treatment received for relief of the symptom(s)
(6)     any non-treatment measures used to relieve the symptom(s)
(7)     other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3; *see Hyatt v. Heckler*, 711 F. Supp. 837, 848 (W.D.N.C. 1989), *aff'd in part, amended in part, vacated in part*, 899 F.2d 329 (4th Cir. 1990).

15

After reviewing the ALJ's decision, this Court finds the ALJ made the necessary findings in support of his credibility determination and analysis of Claimant's complaints of pain pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Regarding objective evidence, the ALJ summarized Claimant's medical records as to each impairment and noted the findings on clinical testing. (R. 25-28, 126-27, 136-38, 140, 175-88, 199, 207, 215, 221, 229-30). The ALJ noted laboratory studies showing only slight inflammation as a result of fibromyalgia, the lack of radiographic studies, the lack of a referral to pain management therapy, Claimant required no inpatient treatment for her depression and anxiety, Claimant's use of a cane despite her normal gait and the lack of a prescription for an assistive device, the lack of restrictions placed on Claimant's activities and infrequent exacerbation of her asthma and COPD which are well-controlled with medication. (R. 27). The ALJ discussed also the findings of Ibikunle Ojebuohoh, M.D. and Dr. Farmer, state agency examining consultants. (R. 26, 145-47, 189-92).

In addition to the objective medical evidence, the ALJ considered also the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) as referenced above. *See* S.S.R. 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). In particular, the ALJ's decision cites the following evidence in evaluating Claimant's credibility: (1) Claimant's ability to maintain her household responsibilities, including preparing meals and light household chores; (2) Claimant's complaints

16

of joint stiffness, left hip pain and headaches; (3) Claimant's testimony that "her legs and knees give away after standing more than fifteen minutes" and that she is unable to lift more than five pounds at a time because of upper extremity weakness; (4) Claimant's use of numerous prescribed medications, including Albuterol inhaler, Advair, Naprosyn, Skelaxin, Amitriptyline, Cymbalta, and the lack of side effects therefrom, the significant pain relief following a Toradol injection and Claimant's positive response to prednisone and nebulizer treatments; and (5) Claimant's use of a wrist splint prescribed by her physician and improvement in her complaints with the recommended walking and back strengthening exercises. (R. 23, 27). The ALJ noted also that while Claimant testified to problems affording medications, she nonetheless had adequate funds to smoke cigarettes. *Id.*

The ALJ properly evaluated Claimant's subjective accounts of her symptoms with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Moreover, the ALJ's decision that Claimant can perform only light exertional activities with only occasional stooping and crouching, despite a state agency physical RFC assessment indicating Claimant was capable of medium exertion with no postural limitations (R. 189-93), reflects the weight and credibility he afforded Claimant's subjective statements about her symptoms. *See* (R. 28) (explaining "the undersigned finds that the claimant does have greater limitations in her ability to lift and carry heavy weights, or perform postural activities due to her COPD and pain complaints"). The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of her limitations was inconsistent with available objective evidence. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with

17

respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

## IV. The ALJ properly considered the cumulative effect of Claimant's impairments on her ability to work.

Claimant contends the ALJ failed to evaluate the cumulative effect of her impairments, including back pain, muscle spasm, "bilateral thumb tendonitis v. bilateral carpal tunnel syndrome," tobacco use, asthma, fatigue, anxiety and rosacea, panic attacks and irritable bowel syndrome, on her ability to work.[4] *See* Pl.'s Mem. at 14.

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his or her physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1. The RFC assessment is based on

---

[4] The gravamen of Claimant's argument is unclear. Claimant's argument could be interpreted as asserting that the ALJ committed error either by failing to make a specific severity finding with regard to all of her impairments at the second step of the sequential evaluation or by ignoring the effect of certain impairments on Claimant's ability to function in conducting the RFC analysis. However, the ALJ's failure to make an explicit finding is not reversible error where the ALJ finds, as he did here, that the claimant has a severe impairment or combination of impairments and considers the omitted impairments at later steps in the sequential evaluation. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 U.S. Dist. LEXIS 13893, at *6, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (finding no reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation provided the ALJ considers that impairment in subsequent steps); *see also Newsome v. Barnhart*, 444 F. Supp. 2d 1195, 1200-01 (M.D. Ala. 2006) (where the ALJ did not specifically address the claimant's diagnosis of Oppositional Defiant Disorder ("ODD") and did not make a finding as to whether ODD constituted a severe impairment, the court nonetheless affirmed the ALJ's decision because the ALJ "*did consider and discuss the underlying evidence* relating to [claimant's] ODD") (emphasis added). Accordingly, the Court will address Claimant's argument only as it relates to the ALJ's alleged failure to discuss these impairments and their functional limitations in his assessment of Claimant's RFC.

all the relevant medical and other evidence in the case record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see also Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.").

Claimant's argument regarding the ALJ's alleged failure to consider the cumulative effects of her impairments merits little discussion, as "[s]ufficient consideration of the combined effects of a [claimant's] impairments is shown when *each is separately discussed in the ALJ's decision*, including discussion of a [claimant's] complaints of pain and level of daily activities." *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (emphasis added) (citations omitted), *aff'd* 179 Fed. Appx. 167 (4th Cir. 2006) (unpublished per curiam). Here, the ALJ acknowledged Claimant's complaints of asthma and associated COPD, fibromyalgia with multiple tender points in the cervical and lumbar spine, elbow and hips, back, neck and left hip pain, multiple joint pains and joint stiffness, anxiety, panic attacks, spasm of her cervical spine, headaches and sinus problems. (R. 25-27). The ALJ acknowledged further Claimant's history of smoking two packs of cigarettes a day and the lack of effort with respect to her smoking cessation or in reducing her daily consumption of nicotine. (R. 27). While not mentioning explicitly the "bilateral thumb tendonitis v. bilateral carpal tunnel syndrome" impression appearing in a 28 September 2004 medical report, the ALJ noted that (1) Claimant was

19

prescribed a left wrist splint; (2) a treating physician indicated that Claimant uses a wrist splint at times; and (3) Claimant wore a left wrist splint during the administrative hearing. (R. 25, 27, 126, 128).

Claimant points out correctly that the ALJ failed to mention explicitly rosacea and irritable bowel syndrome, the diagnosis of each appearing once in medical reports dated 28 September 2004 and 24 June 2005, respectively. (R. 126, 138). The ALJ, however, is not required to specifically refer to every piece of evidence in his decision as long as the decision is sufficient to allow the court to conclude that the ALJ considered the claimant's medical condition as a whole. *See, e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility determination); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Here, the ALJ's summary of these two medical reports, including the examination findings therein (R. 25), "enable[s]...[this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Dyer*, 395 F.3d at 1211.

Moreover, while the ALJ has a duty to evaluate the intensity and persistence of a claimant's symptoms, that duty does not extend to speculating as to the impact of those symptoms. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). Rather, the claimant has the burden of furnishing evidence supporting the existence of a condition and the effect of that condition on her ability to work on a sustained basis. *See* 20 C.F.R. §§ 404.1512(c), 404.1545(a)(3); *see also Pass*, 65 F.3d at 1203. Yet, Claimant has failed to do more than suggest that the ALJ should

have speculated as to what extent any of her impairments, including rosacea and irritable bowel syndrome, may have impaired her ability to work. *See* Pl.'s Mem. at 14 (stating "[a]t no time [] does the ALJ consider the disabling effect of [Claimant's] impairments in combination" but providing no discussion or identification of the limitations arising therefrom).

The ALJ's decision indicates that he considered all of Claimant's mental and physical limitations in totality before determining Claimant maintained the RFC to perform light work. The ALJ's opinion provides a detailed review of Claimant's medical records, citing medical facts and underlying evidence as to each impairment. In addition, the RFC assessment takes account of Claimant's testimony concerning pain to the extent that this testimony proved consistent with the objective medical evidence before the ALJ. *See Hines*, 453 F.3d at 565 (noting the ALJ need not accept Claimant's subjective evidence to the extent it is inconsistent with the available evidence). Also, as explained above, the ALJ's review of Claimant's medical impairments includes also substantive findings by Drs. Ojebuohoh and Farmer, state agency examining consultants, and given the lack of evidence contradicting those findings, the ALJ properly relied on their medical opinions in determining Claimant's work-related capacity. (R. 26).

Based on the foregoing, this Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

21

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 14th day of September, 2009.

Robert B. Jones, Jr.
United States Magistrate Judge

22